**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LATARRA OLLIE,**<br><br>            Plaintiff,<br><br>     v.<br><br>**WAYPOINT HOMES, INC.,**<br><br>            Defendant. | Case No.  14-cv-01996-YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is defendant Waypoint Homes' motion for summary judgment. Having carefully considered the papers submitted, the evidence of record, and the arguments of counsel, and for the reasons set forth below, the Court hereby **GRANTS** defendant's motion for summary judgment. For the reasons set forth herein, the Court adopts the rationale of the Seventh Circuit, which holds that the Equal Credit Opportunity Act ("ECOA") does not apply to typical residential leases, and declines plaintiff's invitation to extend Ninth Circuit authority to include such leases.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On January 12, 2014, plaintiff LaTarra Ollie applied online to lease a home from Waypoint Homes, Inc. ("Waypoint") in Lithia Springs, Georgia. (Dkt. No. 49-1, Declaration of Robert Yakominich ("Yakominich Decl.") Ex C; Dkt. No. 50-2, Declaration of John Soumilas ("Soumilas Decl.") Ex. 1.) At that point in time, Waypoint offered two types of residential leases: one for a term of one year, and another for a term of two years. (Yakominich Decl. Exs. A and B.) These leases are identical in all respects material to the question before the Court. Both leases reflect

that they are Georgia residential leases.

Waypoint processed Ollie's application according to its procedure of using a third-party vendor, named On-Site. (Yakominich Decl. ¶¶ 4, 5.) Under that procedure, an applicant seeking to lease a Waypoint property would visit Waypoint's website and click on a link that says "Apply Now." (*Id*. at ¶ 5.) That would then link to an application page on On-Site's website where the applicant would complete an application. (*Id*.) On-Site would then run a credit report and placed the application and credit report into a file on its servers. (*Id*.) Waypoint could then access those documents for review. (*Id*.) If Waypoint decided to reject the applicant, it clicked a "decline" button for that applicant, and an "Adverse Action Notice" was automatically generated by On-Site. (*Id*.) Waypoint then printed that notice and copied a portion of it into an email to be sent to the applicant. (*Id*.)

Ollie brought this class action under the ECOA, alleging that the form of adverse action notice she received from Waypoint upon denial of her rental lease application fails to comply with the requirements of the ECOA. (Dkt. No. 1.) Waypoint moved to dismiss the complaint on the basis that the ECOA does not apply to residential leases and that plaintiff had failed to allege any right to relief. The Court denied the motion to dismiss finding that plaintiff had stated a plausible claim in part because defendant had appeared to concede that its lease qualified as a "credit transaction" such that it was obligated to comply with the ECOA. (Dkt. No. 24.) Defendant then moved for reconsideration or, alternatively, certification for interlocutory appeal. (Dkt. Nos. 25, 26.)

The Court denied the motion. (Dkt. No. 35.) In its order, the Court noted that although case law supported defendant's contention that residential leases generally do not fall within the scope of the ECOA, the cases upon which defendants relied limited their holdings to "typical" residential leases and there remained a question as to whether the lease at issue in this action was of the same type contemplated by those cases. (Dkt. No. 35 at 2-3 (citing *Laramore v. Ritchie*, 397 F.3d 544 (7th Cir. 2005); *Portis v. River House Associates, L.P.*, 498 F. Supp. 2d 746 (M.D. Pa. 2007); *Head v. North Pier Apartment Tower*, 2003 WL 22127885 (N.D. Ill. Sept. 12 2003).) Because neither party had provided a copy of the lease or application that formed the basis for

plaintiff's complaint, or requested judicial notice of any fact relating to the nature of the leasing arrangement, the Court determined that development of the factual record was necessary and that, construing the allegations in the complaint in plaintiff's favor, she had stated a claim. The Court further noted plaintiff's allegations that Waypoint characterized its decision as a credit transaction, as it allegedly "denied credit" to plaintiff. (*See* Dkt. No. 4.)

Defendant now moves for summary judgment on plaintiff's sole claim on the grounds that the lease for which plaintiff applied constitutes a typical residential lease and, as such, does not constitute a "credit transaction" under the ECOA. On this full record, the Court agrees.

## II. LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine disputed issues of material fact, and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

## III. DISCUSSION

### A. Legal Framework

The ECOA is found in Title VII of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r (1982). As originally passed in 1974, the ECOA prohibited discrimination by any creditor "against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1). Congress later amended the ECOA to add prohibitions against discrimination on the basis of race, color, religion, national origin, and age. Pub. L. No. 94–239, 90 Stat. 251 (1976). On its face, the ECOA applies to all "credit

3

1   transactions." *Bros. v. First Leasing*, 724 F.2d 789, 791 (9th Cir. 1984).

2   A "creditor" is defined for the purposes of the ECOA as "any person who regularly
3   extends, renews, or continues credit." 15 U.S.C. § 1691a(e). "Credit" is, in turn, defined by the
4   ECOA as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and
5   defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. §
6   1691a(d).

### B.  Analysis

The question before the Court is whether the lease Ollie was denied constitutes a "credit transaction" such that the ECOA applies. As stated above, the ECOA applies only to "credit transactions," defined as "the right granted by a creditor to a debtor to defer a payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. §§ 1691a(d)-(e). Stated differently, Waypoint would be a "creditor" if the residential lease at issue provides a lessee the right to defer payment of a debt for the purchase of property or services already purchased. *See Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 546 (7th Cir. 2005).

#### i.  The Residential Lease is not a "Credit Transaction"

The Court finds that the lease for which Ollie applied is a typical residential lease that does not constitute a "credit transaction" such that the ECOA applies. At the time Ollie applied to rent an apartment from Waypoint, the defendant offered two residential lease agreements in Georgia. One was for a length of one year, and the other was for a length of two years (Yakominich Decl. Ex. A ("Lease 1"); Ex. B ("Lease 2")). Both Waypoint leases do not represent credit transactions. The leases contemplate a contemporaneous exchange of payment at the beginning of each month in return for the lessee's ability to use the property as a personal residence for that period. (Leases 1 and 2 at 1.) Rent is due at the beginning of each month, notably "with no grace period." (Leases 1 and 2 at 2.) The tenant's responsibility to pay rent arises at the beginning of each monthly period over the length of the lease. There is no deferral of a debt, and there is no credit transaction.

The Court recognizes that courts remain split on whether different types of leases

1   constitute credit transactions.  *See Laramore*, 397 F.3d at 546.  However, with respect to
2   residential leases, courts have consistently determined that such leases do not constitute credit
3   transactions, *Laramore* being the most prominent.  *Id.*; *Head v. Northern Pier Apartment Tower*,
4   2003 WL 22127885, *3 (N.D. Ill. Sept. 12, 2003); *Portis v. River House Associates, L.P.*, 498 F.
5   Supp. 2d 746, 750 (M.D. Pa. 2007); *but see Ferguson v. Park City Mobile Homes*, No. 89-C-1901,
6   1989 WL 111916, *3 (N.D. Ill. Sept. 18, 1989) (finding that ECOA was "broad enough" to cover
7   lease of a mobile home lot, but providing little analysis and noting that counsel had failed to
8   provide any case authority to limit the ECOA).

9         Plaintiff offers three arguments to suggest that the residential lease here qualifies as a
10  credit transaction, none of which is persuasive.  First, plaintiff contends that when the Waypoint
11  lease is first signed, a resident agrees to pay all the monthly payments for the entire initial term
12  and that the payments represent, in effect, installments on an outstanding debt.  (*See* Dkt. No. 50 at
13  3-4; 9-10.)  That argument, however, is belied by the evidence of record.  As explained above, the
14  lease language establishes that rental payments are due at the beginning of the period for the right
15  to use the property for that same period.  The fact that such arrangement may continue for a one-
16  year or two-year term does not change the nature of the monthly transaction.  Other courts agree,
17  concluding that these residential leases do not create a debt for the entire term, but rather involve
18  the contemporaneous exchange of consideration for a future use, month by month.  *See Laramore*,
19  397 F.3d at 547; *Head v. Northern Pier Apartment Tower*, 2003 WL 22127885, *3 (N.D. Ill. Sept.
20  12, 2003).  Moreover, the testimony of plaintiff's 30(b)(6) witness, Mr. Yakominich, confirms that
21  tenants to Waypoint's leases are not obligated to pay the full amount of the lease from the outset.
22  (Dkt. No. 52-1 at 7 ("Yakominich Dep.") at 60:21-61:8.)  This statement is corroborated by the
23  Lease Buy-Out Addendum, which applied to both Waypoint's one-year and two-year leases.  (Dkt.
24  No. 52-1 at 18 ("Buy-Out Addendum"); Lease 1 at 38 ("The following checked attachments are
25  applicable and attached hereto: [ . . . ] 2. Lease Buy-Out Addendum"); Lease 2 at 35 (same, except
26  listing the Lease Buy-Out Addendum as attachment number 5).)[1]  Thus, plaintiff's argument fails

---

[1] Plaintiff requests that the Court strike this evidence as having been improperly presented in the instant motion practice and as having been produced late. (Dkt. No. 53.) The Court denies

as a factual matter. Summary judgment for Waypoint is appropriate on this ground.

Next, plaintiff claims that Waypoint's references to "credit" or "creditworthiness" in the "Adverse Action Notice" or the leases themselves compel a finding that the lease constitutes a credit transaction. Plaintiff contends that, at the very least, this evidence raises a genuine dispute of fact that preclude summary judgment. The Court disagrees. The central question is whether the substance of the transaction here constitutes a credit transaction as a matter of law. For the reasons stated above, the Court finds that it does not. To hold that references to "credit" or "creditworthiness" render the lease agreement at issue here a "credit transaction" would "exalt form over substance." *See Shaumyan v. Sidetex Co.*, 900 F.2d 16, 19 (2d Cir. 1990) (declining to find that "boilerplate" language in a disclaimer statement alone established a credit transaction to which the ECOA applied).

Finally, plaintiff urges that Waypoint be held to be a creditor because it has represented that it is a creditor in unrelated bankruptcy proceedings. This argument suffers from two critical deficiencies. First, plaintiff offers no argument as to the legal import of this alleged representation. Plaintiff's counsel's declaration states only that running a search for Waypoint Homes in a database of bankruptcy cases nationwide generates a list of nine different cases in which defendant allegedly held itself out as a creditor in a consumer bankruptcy. (Soumilas Decl. at ¶ 13.)

Second, plaintiff has failed to provide *any evidence* that such representations occurred in cases analogous to the one at bar. The Court declines to undertake independently a nationwide search for the same. Regardless, even construing plaintiff's bald assertion that Waypoint has declared itself a creditor in the bankruptcy context in a light most favorable to plaintiff, the assertion does not raise a genuine dispute about the nature of the lease transaction at issue in this

---

plaintiff's request. The Court finds such evidence relevant to rebut an argument plaintiff made in her opposition papers, and therefore properly submitted in connection with plaintiff's reply. Furthermore, the fact that such information was belatedly produced did not prejudice plaintiff, where plaintiff was permitted to ask defendants' 30(b)(6) witness about this evidence and could have – but elected not to – reserve time and seek a follow-up deposition. No basis to strike this evidence exists.

case. As set forth above, the lease transaction at issue here is not a "credit transaction" as defined by the ECOA.

Further, the circumstances surrounding Waypoint's appearances in bankruptcy proceedings represent the atypical circumstance, even assuming it is related to the terms of the leases at issue here. Specifically, the Court notes that while plaintiff contends that Waypoint is a nationwide company and self-avowed "premier provider of single family rental homes in America," she has only identified nine instances where Waypoint purportedly appeared as a creditor. This evidence suggests that bankruptcy proceedings involving Waypoint are not reflective of its ordinary residential leasing practices.

### ii. *Brothers v. First Leasing* Does Not Apply

Replying principally on the Ninth Circuit's decision in *Brothers v. First Leasing*, Ollie urges the Court to find that the residential lease here constitutes a credit transaction. 724 F.2d 789 (9th Cir. 1984). In *Brothers*, the Ninth Circuit held that transactions covered by the Consumer Credit Protection Act ("CCPA"), specifically consumer leases, were subject to the ECOA. *Id.* at 795. *Brothers*, however, does not compel a finding in plaintiff's favor here. As an initial matter, in *Brothers*, the Ninth Circuit was considering consumer, not residential, leases.

More importantly, the analytical framework the Ninth Circuit applied in reaching its holding in *Brothers* does not fit the facts of this case. There, the Ninth Circuit confronted the question of whether the ECOA applied to consumer leases that fell within the scope of the Consumer Leasing Act ("CLA"). 15 U.S.C. §§1667-1667e (1987). Both the ECOA and the CLA fall under the same broader statutory umbrella: the CCPA, which the Ninth Circuit recognized is "a comprehensive statute designed to protect consumers." *Id.* at 791. It was on this "umbrella" foundation that the Ninth Circuit's decision ultimately rested.

In its analysis, the Ninth Circuit acknowledged both that the term "credit transaction" in the ECOA was literally broad enough to cover "consumer leases," and yet, with respect to the CCPA, the legislative history suggested that consumer leases were not originally covered. *See id.* at 792-93. Thus court concluded (but found no need to resolve) that it was "unclear whether the ECOA applied to consumer leases" *before* the CLA was made a part of the CCPA. *Id.* at 793. To

7

resolve the potential conflict that arose *after* the CLA was made part of the CCPA, the court turned its analysis to whether one provision of the CCPA (*i.e.*, the ECOA) applied to another (the CLA), and if so, how.

In order to answer this question, the court assessed the statutory structure and the legislative history of the CLA and ECOA. The court recognized the broad societal purposes of the ECOA and the importance of eradicating discrimination, particularly with respect to credit transactions. Having analyzed the statutory scheme as a whole, the Ninth Circuit concluded that the CCPA is "wholly inconsistent with the view" that the ECOA would not apply to the entire act. The court therefore concluded that Congress intended that the ECOA's antidiscrimination provisions apply to all transactions covered by the Consumer Credit Protection Act. *Id*. at 795 ("We hold only that Congress intended to make the ECOA's antidiscrimination provisions applicable to all transactions covered by the Consumer Credit Protection Act, whether those transactions were covered under the initial form of the Act or as a result of the subsequent amendments.").

The statutory interplay that led the Ninth Circuit to conclude that consumer leases covered by the CLA are also covered by the ECOA does not lend itself to the same conclusion with respect to residential leases. Plaintiff cites no provision of the CCPA relating to residential leases that occupies a similar position vis-a-vis the ECOA as does the CLA. In light of this, and the Ninth Circuit's holding that *Brothers* pertains to consumer leases, the Court declines plaintiff's invitation to extend *Brothers* to residential leases.[2]

**IV. CONCLUSION**

For the reasons set forth above, the Court finds that based on the evidence of record, there exists no genuine dispute that the ECOA does not apply to the residential lease at issue in this

---

[2] So, too, does the Court decline to extend the logic of *Brothers* to residential leases based on the argument presented Judge Canby's dissent that such result is compelled by the *Brothers* court's rationale. *Brothers*, 724 F.2d at 797 (Canby, J. dissenting). As stated above, the Court finds the Ninth Circuit's holding carefully limited to its own terms. Furthermore, although *Brothers* suggests that the ECOA's coverage of "credit transactions" could be held to extend to a lease where a lessee is in fact responsible for the entire value of the lease term at the outset, 724 F.2d 792 n.8, as the Court has explained above, such is not the case here.

1  case. Accordingly, defendant's motion for summary judgment is **GRANTED**. The parties shall
2  submit a proposed form of judgment to be entered by the Court no later than **five days** following
3  the entry of this Order.
4      **IT IS SO ORDERED**.
5  Dated:  April 30, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**